# IN THE COURT OF APPEALS OF IOWA

No. 21-1521
Filed January 27, 2022

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**J.W., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Harrison County, Jennifer Bahr, District Associate Judge.

The father appeals the termination of his parental rights. **AFFIRMED**.

Sara E. Benson of Meldrum & Benson Law, P.C., Council Bluffs for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Justin R. Wyatt, Glenwood, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This family came to the attention of the Iowa Department of Human Services (DHS) after a reported domestic-abuse incident between the child's mother and father and the mother's new paramour. The incident included the violent breaking of the window of the car in which the eight-month-old M.W. was present. The child was covered in broken glass and sustained injuries. The parents admitted mental-health issues, and with ongoing aggressive hostility issues between the parents, the juvenile court removed the child from the parents' custody and placed her in foster care. The child was later adjudicated in need of assistance. The parents were required to obtain evaluations for mental health, substance abuse, and parenting. They were to follow any recommendations made by the evaluators. The father struggled to follow the requirements.[1]

The father was inconsistent attending his required mental-health therapy. He was also unable to maintain steady employment throughout DHS involvement, instead bouncing between jobs every few months due to his unreliability, driving concerns about his ability to safely care for his young child.

Supervised visits were offered, but the father skipped many of them. When he did attend, he struggled to maintain focus on the child and often ended the visits early.

The father also had many contacts with law enforcement. These contacts included multiple arrests, including him being arrested for buying marijuana. A few months later, about four months before the termination hearing, law enforcement

---

[1] The mother also failed to participate in required services. Her parental rights were terminated. She does not appeal, so our focus in this opinion is on the father.

caught him smoking marijuana with fourteen-year-old girls behind some grain bins in the town in which he lived. About three weeks before the termination hearing, he was arrested for assault and disorderly conduct after becoming drunk and belligerent. He showed a remarkable lack of awareness of how his conduct reflected on his parenting ability by trying to excuse his behavior by saying that, if the child had been in his care, she would not have been in any danger because he would have kept her in a different room.

The father has also shown that his dysfunctional behavior is not limited to his interactions with the mother of this child. He has also had several domestic incidents with his new girlfriend. The father and his new girlfriend had their own child about six weeks before the termination hearing in this case. By the time of the termination hearing, the other child had already been removed from the custody of the father and his new girlfriend due to circumstances that closely mirror the circumstances in this case—violence in the home, mental-health concerns, and inability to provide proper care.

There are also unresolved issues with the father's substance abuse. He was ordered to undergo a substance-abuse evaluation and treatment. He failed to complete a substance-abuse evaluation because he was "too hung over" to attend on the scheduled date. He did not initially participate in drug screens. When he did finally test, he tested positive for marijuana.

After many months of offered services, the father made no noticeable improvement, so the permanency plan changed from reunification to termination of parental rights. The State filed a petition seeking to terminate the father's rights. Following a hearing, the juvenile court granted the petition and the father appeals.

## I.      Standard of Review

A termination-of-parental-rights proceeding is reviewed de novo.[2]  We give weight to the juvenile court's witness credibility determinations and findings of fact, but we are not bound by them.[3]

## II.      Delayed Appeal

Before proceeding to the merits of the father's appeal, we must first determine whether we have jurisdiction to hear it.  This is an issue because the father failed to meet the deadline for filing notice of appeal.  Iowa Rule of Appellate Procedure 6.101(1)(a) requires an appealing party to file notice of appeal within fifteen days of the juvenile court's order terminating the party's parental rights.  The father filed his notice on the sixteenth day.

Generally, the father's failure to meet the notice-of-appeal deadline would deprive us of jurisdiction to hear his appeal.[4]  However, in *In re A.B.*, our supreme court, for the first time, allowed delayed appeals in termination-of-parental-rights cases in some circumstances.[5]  The circumstances that permit delayed appeals are "where the parent clearly intended to appeal," "the failure to timely perfect the appeal was outside of the parent's control," and the delay was "no more than negligible."[6]  A footnote in *A.B.* acknowledging the extenuating circumstances

---

[2] *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).
[3] *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).
[4] *See Hills Bank & Tr. Co. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009) ("A failure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal.").
[5] 957 N.W.2d 280, 289–90 (Iowa 2021) (permitting delayed appeals in certain circumstances when timely notice of appeal was filed but the petition on appeal was filed late); *see also In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021) (applying the delayed appeal standards set out in *A.B.* to a late-filed notice of appeal).
[6] *A.B.*, 957 N.W.2d at 292.

causing the delayed filing in that case created some confusion about whether "extenuating circumstances" was a fourth circumstance that must exist before a delayed appeal can be allowed.[7] Our supreme court has since resolved the confusion by declaring that extenuating circumstances are not required, and only the noted three circumstances are needed to permit a delayed appeal.[8] Because extenuating circumstances are not required, "the reason counsel failed to file a timely notice of appeal is irrelevant to" the determination of whether to permit a delayed appeal.[9]

Here, the father has shown the three circumstances required to permit a delayed appeal. The father clearly intended to appeal, as he notified his attorney that he wanted to appeal. He also signed the notice of appeal on time.[10] The failure to timely file the notice of appeal was outside the father's control, as his attorney had the task of timely filing it after he signed it. Finally, the delay in filing was negligible, as the notice of appeal was filed three hours and thirty-eight minutes after the midnight deadline. The court system was closed at 3:38 a.m. on the day after the deadline when the notice was filed, just as it would have been had it been timely filed a few hours earlier at 11:59 p.m. on the day of the deadline, so no delay to any party or the court was caused by the late filing. As a result, the delay in filing was "no more than negligible." As the father met the requirements

---

[7] *See In re W.T.*, 967 N.W.2d 315, 319 n.1 (Iowa 2021) (collecting court of appeals cases that required a showing of extenuating circumstances and those that did not).

[8] *See W.T.*, 967 N.W.2d at 318–19.

[9] *See W.T.*, 967 N.W.2d at 321.

[10] *See* Iowa R. App. P. 6.102(1)(a) (requiring an appellant in a termination-of-parental-rights case to sign the notice of appeal).

for permitting a delayed appeal, the delayed appeal is permitted, and we will reach the merits of it.

## III.    Analysis

In reviewing whether a parent's rights were properly terminated, we follow the three-step process set out in Iowa Code section 232.116.  We must determine "(1) whether the State proved any grounds for termination, (2) whether termination is in the child's best interests, and (3) whether any exceptions save the parent-child relationship."[11]

The father raises three issues on appeal.  We address each separately.

### A.    Statutory Grounds.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h).  The father challenges the sufficiency of the evidence supporting both grounds.  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."[12]  We choose to focus on paragraph (h).

To terminate parental rights under Iowa Code section 232.116(1)(h), the State must prove by clear and convincing evidence that: (1) the child is three years old or younger; (2) the child has been adjudicated in need of assistance; (3) the child has been removed from the parents' physical custody for at least six of the last twelve months or for six consecutive months with less than thirty days at home; and (4) the child cannot be returned to the parent's care at the time of the hearing.[13]

---

[11] *W.T.*, 967 N.W.2d at 322 (citing Iowa Code § 232.116(1)-(3)).
[12] *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).
[13] Iowa Code § 232.116(1)(h)(1)-(4).

The father only challenges the fourth element—that the child could not be returned to his care at the time of the hearing.[14]

At the time of the hearing, the father had failed to comply with necessary requirements for reunification. He had not adequately addressed his mental-health concerns and was only sporadically attending required therapy.[15] He also failed to adequately address his substance-abuse issues. Further, he did not attend all of his scheduled visits with the child and did not progress beyond fully supervised visits. He had several run-ins with law enforcement throughout this matter, many of which involved circumstances much like those that caused this child to be removed from his care. He also bounced from job to job during this matter, showing instability and unreliability that prevents us from concluding the child can be safely placed in his care. Finally, the evidence shows ongoing domestic violence where he resides—a condition that originally led to the child's removal, led to the removal of another of his children, and leads to our conclusion that the child cannot be safely placed in his care.[16] Following our de novo review, we find the State proved grounds for termination under section 232.116(1)(h).

### B.    Permissive Exception—Closeness of Relationship

The father contends his rights should not be terminated because of the bond

---

[14] *See D.W.*, 791 N.W.2d at 707 (finding "at the present time" to mean at the time of the termination hearing).

[15] *See In re D.H.*, No. 18-1552, 2019 WL 15668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a valid basis for terminating parental rights).

[16] *See In re J.R.*, No. 17-0556, 2017 WL 2684405, at *3 (Iowa Ct. App. June 21, 2017) ("The threat to children posed by domestic violence in their home may serve as the basis for terminating parental rights."); *see also In re A.R.C. III*, No. 13-0786, 2013 WL 3458222, at *5–6 (Iowa Ct. App. July 10, 2013) (considering unresolved domestic violence issues as a basis for terminating parental rights).

he shares with his child. This implicates the third step in our three-step analysis—the permissive exceptions to termination set forth in Iowa Code section 232.116(3). Once the State has proved grounds for termination by clear and convincing evidence, the burden rests on the parent for establishing an exception under Iowa Code section 232.116(3).[17] The exceptions are permissive, not mandatory.[18]

The father's claim relies on section 232.116(3)(c), which provides a permissive exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The father has not met his burden of showing the applicability of this exception.

The child has been out of the father's custody since she was nine months old. During the fourteen-month period between removal and the termination hearing, the father exercised only sporadic, supervised visits. Individuals responsible for supervising the father's visits with the child noted that the child seemed uneasy around the father and preferred to spend time with her grandmother or the service providers rather than the father. This evidence, with no persuasive competing evidence from the father, convinces us that the relationship between the father and the child is not a close one.

The evidence also establishes that the child is well-bonded to and well-adjusted to living with her foster parents. So, even if there were a close relationship between the father and the child, the evidence does not support a finding that termination of the father's rights would be detrimental to the child.

---

[17] *W.T.*, 967 N.W.2d at 322.
[18] *W.T.*, 967 N.W.2d at 324.

Based on our de novo review, we find the father failed to prove the applicability of the permissive exception under section 232.116(3)(c) and decline to apply it.

### C.     Reasonable Efforts Toward Reunification

The father also contends his parental rights were improperly terminated because the State did not provide reasonable efforts toward reunification. "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, . . . [t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."[19]  To preserve error for appellate review of his claim that reasonable efforts were not made, the father needed to raise the issue prior to the termination hearing.[20]  This is required because a request for more services or a notice that reasonable efforts are not being made must be provided to the court at a time when the issue may be addressed and remedied.[21]  Because the father twice requested more visitation at review hearings, we will reach the merits of this contention.

After our de novo review, we conclude reasonable efforts were made toward reunification between the father and the child and adequate visitation was provided. At review hearings, the father asked for more visitation time. His requests were denied because the father did not attend all offered visits and, during many of those he did attend, he struggled to focus on the child and ended the visits early. The court was unwilling to provide more visitation until the father

---

[19] *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).
[20] *See In re P.L.*, No. 19-0103, 2019 WL 1294809, at *1 (Iowa Ct. App, Mar. 20, 2019).
[21] *P.L.*, 2019 WL 1294809, at *1.

fully attended the visitation he was already offered. Because the father failed to take advantage of this reunification effort, we conclude that failure to offer him more visitation time was not a failure to make reasonable efforts toward reunification.

**IV.    Conclusion**

The State proved statutory grounds for terminating the father's parental rights. The father failed to prove that a statutory exception should be applied to avoid termination. We find reasonable efforts toward reunification were made. As a result, we affirm the juvenile court's ruling terminating the father's parental rights to this child.

**AFFIRMED.**